608 S.E.2d 896

BRANCH BANKING AND TRUST COMPANY
OF SOUTH CAROLINA, Respondent,

v.

CAROLINA CRANK & CORE, INC., Michael D. McNelis,
Kenneth F. Taylor, Robert Thompson and Bruce
Tipi, Defendants,

**Of Whom Bruce Tipi is Appellant.**

No. 3942.

Court of Appeals of South Carolina.

Submitted Jan. 1, 2005.

Decided Feb. 7, 2005.

648

F. Milton Mann, Jr., of Spartanburg, for Appellant.

Seann A. Gray, of Greenville, for Respondent.

HEARN, C.J.:

In this civil action, Bruce Tipi appeals the circuit court's grant of Branch Banking and Trust Company of South Carolina's motion for summary judgment. As a result, Tipi was found to be personally liable on a $325,000 guaranty owed to the Bank. We affirm.[1]

## FACTS

In December 1998, Michael McNelis, Kenneth Taylor, and Robert Thompson purchased an automotive crankshaft division of a company and incorporated as Carolina Crank & Core, Inc. McNelis, Taylor, and Thompson obtained a term loan from Branch Banking and Trust Company of South Carolina[2] ("Bank"), to assist in the purchase. The Bank also agreed to extend a line of credit in the amount of $175,000, as evidenced by the company's promissory note dated February

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. The loan was initially with First Federal Bank, which was purchased by Branch Banking and Trust Company of South Carolina in 2001.

2, 1999, with a maturity date of February 2, 2000. In addition to other security given by the company to the Bank, McNelis, Taylor, and Thompson executed and delivered their personal guaranty to the bank thereby securing payment of the indebtedness owed to the bank. This line of credit is the indebtedness at issue.

In May 1999, the Bank increased the line of credit to $225,000, as evidenced by the Company's promissory note dated May 10, 1999, with the original maturity date of February 2, 2000. Again the personal guaranties of McNelis, Taylor, and Thompson were executed and delivered to the Bank, securing the indebtedness owed to the Bank. The Bank subsequently extended a second line of credit, distinct from the original line of credit, in the amount of $100,000. The Company executed and delivered its promissory note to the Bank on November 24, 1999, also reflecting the same February 2, 2000 maturity date as the original line of credit. Again the personal guaranties of McNelis, Taylor, and Thompson were executed and delivered to the Bank.

Both lines of credit matured on February 2, 2000, and at that time the Bank agreed to renew the lines of credit for an additional three months. Moreover, the Bank combined the two lines of credit into a single line with a total indebtedness of $325,000. The Company executed and delivered its promissory note to the Bank on February 2, 2000, evidencing this consolidation, and also reflecting the new May 2, 2000 maturity date. The lines of credit were renewed for another three months from May 2, 2000, to establish a new maturity date of August 2, 2000. In each renewal, the personal guaranties of McNelis, Taylor, and Thompson were executed and delivered to the Bank, securing the indebtedness.

As of the August 2, 2000 maturity date, the Bank had made a decision not to renew the outstanding line of credit due to the poor financial condition of the Company. J. Timothy Camp, the Bank loan executive responsible for the Company's line of credit, informed McNelis, in his capacity as company president, that the Bank would be unwilling to renew the line of credit without the Company obtaining additional Bank-approved security, including a new guarantor.

McNelis informed Camp the company was in the process of acquiring an additional investor. McNelis identified Bruce Tipi, the appellant, as the potential investor. Tipi decided to become an investor, shareholder, and employee of the Company in an agreement formalized on September 25, 2000.

Camp testified the Bank required Tipi's personal guaranty as a condition of renewing the line of credit, and no renewal would have been approved absent Tipi's guaranty. The Credit Approval Report narrative prepared by Camp on October 4, 2000 illustrated the Bank's position. The report stated: "The [Company] has requested that [Bank] renew an existing $325K line of credit ... [Bank] will require the personal guarantee of Mr. Bruce W. Tipi." On October 6, 2000, Camp prepared the appropriate documentation to renew the line of credit, which included a new promissory note, effective August 2, 2000, and a guaranty, also effective August 2, 2000. The guaranty had four signature lines, under which the names of McNelis, Taylor, Thompson, and Tipi were typed. Upon receipt of the signed documents, including the fully executed guaranty complete with the signature of Tipi, the Bank renewed the line of credit effective retroactively to August 2, 2000 with a maturity date of April 2, 2001.

Ultimately, the Company defaulted on its obligation to the Bank. The Bank commenced this action seeking to collect on the outstanding indebtedness under the promissory note and under the signed guaranty. Tipi denied liability under the signed guaranty, asserting a failure of consideration.[3] The circuit court rejected Tipi's argument and granted summary judgment in favor of the Bank, thus rendering Tipi liable under the guaranty. Tipi appeals the grant of summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

**3.** The parties agree Tipi, along with McNelis, Taylor, and Thompson, executed the guaranty document. The parties disagree only as to whether this guaranty is enforceable against Tipi.

entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the court must view the facts in the light most favorable to the non-moving party. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001).

"In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: summary judgment is proper when 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Regions Bank v. Schmauch*, 354 S.C. 648, 659, 582 S.E.2d 432, 438 (Ct.App.2003) (citations omitted).

## LAW/ANALYSIS

Tipi advances two primary arguments in support of his position that the circuit court erred in granting the Bank's motion for summary judgment. First, Tipi alleges the circuit court erred in finding the guaranty was supported by sufficient legal consideration. Second, Tipi claims the circuit court erred in finding mutual assent existed between Tipi and the Bank. We disagree as to both arguments and affirm.

### I. The circuit court correctly found the guaranty was supported by sufficient legal consideration.

Tipi argues the circuit court erred in finding the guaranty was supported by sufficient legal consideration. He alleges a lack of sufficient legal consideration because the Bank did not advance any additional funds after receipt of the guaranty. We disagree.

"A guaranty is 'a promise to answer for the payment of some debt or the performance of some duty in case of the failure of another person who is himself in the first instance, liable to such payment or performance.'" *Crafton v. Brown*, 346 S.C. 347, 350–51, 550 S.E.2d 904, 905 (Ct.App.2001) (citation omitted). A guaranty must be supported by sufficient legal consideration, which can consist of either a benefit to the principle obligor or guarantor, or some detriment to the obligee. *Hope Petty Motors of Columbia, Inc. v. Hyatt*, 310 S.C. 171, 178, 425 S.E.2d 786, 791 (Ct.App.1992). Consideration that is wholly past is not valuable consideration. *Future*

*Group, II v. Nationsbank,* 324 S.C. 89, 97, 478 S.E.2d 45, 49 (1996) (citation omitted). If all debt was pre-existing, the guaranty must "be supported by some new consideration other than the original debt." *Id.* Moreover, the guarantor need not derive any benefit from either the principle contract or the guaranty provided there is a benefit to the principle obligor or a detriment to the creditor. *Crafton,* 346 S.C. at 354, 550 S.E.2d at 907.

In this case, in exchange for receiving Tipi's guaranty, the Bank agreed to extend the line of credit for an additional eight months past the original maturity date, thus forbearing on its pre-existing right to enforce other remedies, including collection under the original note. This agreement to extend the line of credit and forebear exercising remedies available to the Bank was a benefit to the Company and Tipi as shareholder, guarantor, and employee, as well as a detriment to the Bank.

█ Tipi further asserts the circuit court erred in finding consideration was legally sufficient because the guaranty was not executed simultaneously with the note. We disagree.

█ If a note and guaranty are executed simultaneously, the consideration of the note functions as consideration for the guaranty; however, if the documents are not executed simultaneously, there is no presumption of consideration, and the consideration must be proved. *See id.* at 351, 550 S.E.2d at 907.

In this situation, the only evidence regarding the execution of the note and the guaranty was testimony offered by Camp. Camp testified he prepared the new line of credit and guaranty documents together on October 6, 2000 and delivered them to the Company for the requisite signatures. Camp testified that the line of credit would not have been renewed prior to the Bank's receipt of the signed guaranties. Additionally, the executed loan renewal documents, including Tipi's signed personal guaranty, were returned to the Bank and entered into the Bank's computer system on October 12, 2000. Tipi offered no evidence to the contrary at trial. Therefore, we find the circuit court correctly held the note was prepared and executed simultaneous to the guaranty, that it was forwarded for signatures contemporaneous with the guaranty, and that the Bank renewed the line of credit upon receipt of all the signed

documents. Moreover, even if the note and guaranty were not executed simultaneously, we have previously held the guaranty was supported by the additional consideration of the Bank forgoing the remedies available to it at the time of the guaranty. Accordingly, we affirm the ruling of the circuit court.

## II. The circuit court did not err in finding mutual assent existed between Tipi and the Bank.

 Tipi claims the circuit court erred in finding mutual assent existed between Tipi and the Bank. We disagree and affirm.

 "A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties." *Crafton*, 346 S.C. at 354, 550 S.E.2d at 907. "If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement is contemporaneous with the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract." *Id.*

Because the guaranty and promissory note were executed contemporaneously, further evidence of a meeting of the minds is not necessary. Therefore, the circuit court did not err in finding that mutual assent existed between Tipi and the Bank, and the grant of summary judgment is hereby

**AFFIRMED.**

GOOLSBY and WILLIAMS, JJ., concur.